## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
## DELTA DIVISION

MARC SCOTT SILVERBERG                                            PLAINTIFF

VERSUS                                            CAUSE NO. 2:09cv119-P-S

BOYD TUNICA, INC., a Mississippi corporation,
d/b/a Sam's Town Hotel and Gambling Hall                    DEFENDANT

---

## MEMORANDUM OF AUTHORITIES SUPPORTING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

---

I.      **INTRODUCTION**

How does one define being a "good leader"? Peter Drucker, a famous management consultant, once said that "[t]he productivity of work is not the responsibility of the worker but of the manager." He is correct. Those at the top are *ultimately* responsible for those who work for them. Defendant Boyd Tunica, Inc., a Mississippi corporation, d/b/a Sam's Town Hotel and Gambling Hall ("Sam's Town" or "Defendant") contend that Plaintiff Marc Scott Silverberg ("Mr. Silverberg" or "Plaintiff"), as the Director of the Food and Beverage Department and ultimately responsible for his employees and their actions, failed to satisfactorily lead his Department and resulted in countless personnel problems that could have ultimately exposed Sam's Town to great liability. Consequently, he was terminated and then brought a lawsuit against his former employer, alleging race and religious discrimination and retaliation under Title VII and race discrimination under 42 U.S.C. § 1981. As Sam's Town argues *infra*, Sam's Town is entitled to summary judgment as to all of Mr. Silverberg's claims. In support, Defendant submits this Memorandum of Authorities Supporting its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine issue of material fact exists when, after viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury court return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On the other hand, if a rational trier of fact could not find for the nonmoving party based on the evidence presented, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584-88 (1988).

Moreover, summary judgment is mandated against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "The mere existence of a scintilla evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Finally, it should be noted that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327.

## III. FACTS

### A. MARC SILVERBERG'S EMPLOYMENT WITH SAM'S TOWN

Defendant is a Mississippi corporation which operates a hotel and casino known as Sam's

3545383.5/06597.33481

Town in Tunica, Mississippi. Sam's Town is a wholly owned subsidiary of Boyd Gaming, Inc. The Plaintiff, Marc Scott Silverberg, was hired in May 2006 as the Director of Food and Beverage ( "F & B") at Sam's Town. *See* Complaint at ¶4, attached hereto as Exhibit A. As the Director of F & B, Mr. Silverberg was responsible for overseeing the Department's operations and ensuring that company policies and procedures were implemented and followed in his Department. Despite Mr. Silverberg's insistence that he did a good job and his employees loved him, since he was hired in May 2006, a multitude of personnel issues arose in his Department – a number of which could have exposed Sam's Town to significant liability.

1.     Investigation by Barbara Bolender in January 2008

In January 2008, Boyd Gaming's corporate office in Las Vegas, Nevada received an anonymous complaint from an F & B employee regarding one of Mr. Silverberg's supervisors at that time. In short, this employee (or group of employees) believed management was not responsive to their needs.[1] (Boyd Gaming's corporate office will hereinafter be referred to as "corporate.")     Because corporate takes complaints of this nature very seriously, Barbara Bolender ("Ms. Bolender"), Director of Employee/Labor Relations, was sent to conduct an independent investigation as a neutral investigator. *See* Affidavit of Barbara Bolender attached hereto as Exhibit D. When she visited Tunica, she looked at the whole Department. *Id.* As a part of her investigation, she spoke to approximately 12 to 20 kitchen employees as the complaint involved one of the kitchen supervisors, an employee who knew Mr. Silverberg prior to her position at Sam's Town. *Id.* As a result of her independent investigation, Ms. Bolender

---

[1] This entire corporate investigative file was withheld from disclosure, subject to a protective order as the investigation contained proprietary and confidential information. This proposed protective order is attached hereto as Exhibit B. Counsel opposite never contacted Defendant's counsel regarding the protective order nor signed the proposed protective order. However, emails were disclosed that detailed this investigation. *See* Email from B. Ferguson dated Jan. 17, 2008 and Email from B. Ferguson dated Feb. 7, 2008 collectively attached hereto as Exhibit C.

determined (and subsequently reported her objective findings to her superiors at corporate, Bill Noonan and Chris Gibase) that: Mr. Silverberg was not managing his managers (like the one who was the subject of the complaint) and in turn, his managers were not managing their employees. As a result of her investigation, she recommended that Mr. Silverberg be placed on a Performance Improvement Plan ("PIP"). *Id.* That idea was rejected and instead Mr. Silverberg was placed under George Stadler's ("Mr. Stadler"), the Assistant Vice President and General Manager of Sam's Town, direct supervision so that Mr. Stadler could assist Mr. Silverberg in being a better Director of F & B.[2]

      2.      Continued Personnel Problems in F & B

Following Ms. Bolender's independent investigation, Mr. Silverberg continued to have more and more personnel problems in his Department. Most of these problems involved Mr. Silverberg's failure to either communicate company policies and procedures or ensure that they were being implemented and followed by his managers. For example, employees were returning to work from being on leave without Human Resources's ("HR") knowledge. *See* Email from M. Silverberg dated Feb. 12, 2008 attached hereto as Exhibit E. Another incident involved an employee soiling her clothes as she needed an emergency restroom break, yet was provided no relief from fellow employees. *See* Email from B. Ferguson dated Feb. 28, 2008 attached hereto as Exhibit F.

Perhaps F & B's personnel problems reached its pinnacle when Mr. Stadler discovered that Mr. Silverberg, without any prior approval by HR (or with their knowledge) had placed one of his beverage employees, under surveillance for many weeks. Then, Mr. Silverberg, without either notifying HR or without prior approval, then brought the employee down to be

---

[2] Prior to January 2008, Mr. Silverberg had been under the direction of Assistant General Manager, Brett Borek (Mr. Borek").

interrogated by the Directors of Surveillance and Security, completely contrary to Boyd policy and procedure. *See* Email from B. Ferguson dated Jul. 24, 2008 attached hereto as Exhibit G.

      3.     Mr. Silverberg's PIP

As a result of Mr. Silverberg's compounding personnel problems,[3] and seven (7) months after corporate originally suggested the solution, Sam's Town decided (with approval from corporate) that Mr. Silverberg would be placed on a PIP. He was presented with this 30 day plan on July 29, 2008. This PIP addressed: (1) timely documenting and following-up with employees regarding employee issues; (2) notifying HR of employee incidents; (3) completing evaluations in a timely manner (at that point, F & B was the only department that had not caught up to speed with outstanding employee evaluations); (4) notifying HR when F & B employees are out on leave; (5) reviewing F & B employees' Personnel Action Forms ("PAF") and ensuring the pay rate is correct; (6) training F & B employees on Boyd policies and procedures; (7) communicating sufficiently with managerial staff; (8) notifying HR when transferring F & B employees from one venue to another; (9) properly and consistently entering paid time off ("PTO") into the system so that employees' time and attendance calendars are kept up to date; (10) taking initiative with his job, which included being visible in his job and all venues; (11) addressing problems in the beverage department; (12) addressing problems in the food department; and (13) being accountable. *See* M. Silverberg Performance Improvement Plan attached hereto as Exhibit I.

Prior to presenting Mr. Silverberg with this PIP, Mr. Stadler obtained corporate's approval. *See* Exhibit D. Mr. Stadler and Angela Skinner ("Ms. Skinner"), Director of Human Resources at Sam's Town, informed Mr. Silverberg that he had thirty (30) days to get into

---

[3] *See* letter from K. Randall dated Jul. 25, 2008 attached hereto as Exhibit H (detailing Mr. Silverberg's Department's HR issues).

conformance with the PIP.

After the Plan was presented to Mr. Silverberg, it seemed that he lost even further control of his department. More personnel issues arose and Mr. Silverberg gave the impression that he was more concerned with shifting blame and making excuses rather than solving his own deficiencies. For example, employees were out on military leave without notification to HR. *See* Email from K. Randall dated Aug. 5, 2008 attached hereto as Exhibit J. Moreover, complaints continued from the beverage employees regarding the policy of no "early-outs." *See* Email from B. Ferguson dated Aug. 7, 2008 and Email from B. Ferguson dated Aug. 9, 2008 attached hereto collectively as Exhibit K (beverage servers complaining that when times were not busy, they were forced to stay at work, something atypical in the restaurant and bar business).

### 4.    The Final Straw

On or about August 11, 2008, HR received a complaint from a beverage employee that her ex-boyfriend, a barback[4] at Sam's Town, had been staying at the casino after work and drinking at the bar without playing or paying. Afterwards, he went home and physically abused her. Consequently, HR initiated an investigation regarding this particular barback and the other barbacks accused of drinking on the company's dime without playing. *See* Email from B. Ferguson dated Aug. 11, 2008 attached hereto as Exhibit L. These accusations were confirmed by almost all of the barbacks and the bartenders who were serving them. *See* Email from B. Ferguson dated Aug. 13, 2008 attached hereto as Exhibit M.

Despite sitting in on these meetings with the accused and witnessing their confessions, Mr. Silverberg was still convinced that they were wrongfully accused and decided to conduct his

---

[4] A barback assists the bartenders in setting up and stocking a bar operation.

3545383.5/06597.33481

own renegade investigation, thus undermining HR's investigation. *See* Email from A. Skinner dated Aug. 15, 2008 attached hereto as Exhibit N. As a result of this issue and the compounding personnel issues, Mr. Stadler <u>and</u> corporate decided to terminate Mr. Silverberg on August 22, 2008 for job performance issues. As Mr. Silverberg was a director-level employee, Mr. Stadler did not have the discretion to unilaterally terminate him. *See* Exhibit D. During the termination meeting, Mr. Stadler offered to assist Mr. Silverberg in his job search. *See* Minutes from Meeting dated Aug. 22, 2008, attached hereto as Exhibit O.

     5.      Mr. Silverberg's Use of Open Door Policy <u>After</u> His Termination

Following his separation from Sam's Town, Mr. Silverberg wrote to Mr. Noonan at corporate regarding the circumstances of his termination. He discussed these same concerns with Paul Chakmak, Chief Operating Officer with Boyd Gaming, Inc. *See* Memorandum to File by P. Chakmak attached hereto as Exhibit P. During this conversation, Mr. Silverberg reiterated his concerns about Mr. Stadler's alleged prejudice against Jews, African Americans, and Italians.[5] *Id.* ***These communications were the first time Mr. Silverberg made corporate aware of his concerns with Mr. Stadler.*** Even though Sam's Town (corporate and Mr. Stadler) had already decided to terminate Mr. Silverberg's employment, an immediate investigation was conducted regarding his complaints and there was no finding of no discrimination. During both communications with corporate, Mr. Silverberg insisted that he had spoken with Mr. Borek regarding his concerns that Mr. Stadler was anti-Semitic. Mr. Borek vehemently denied these alleged conversations and further, Mr. Borek was not involved nor was he consulted prior to Mr.

---

[5] This type of behavior is not tolerated by Sam's Town. This is evidenced by Angela Skinner's ("Ms. Skinner," Human Resources Director at Sam's Town) immediate reaction to an incident that involves a director-level employee. Ms. Skinner's obligation, when she heard that the director had been engaged in misconduct that involved racial slurs, was to immediately report the situation to corporate, which she did. *See* Excerpts from Deposition Testimony of Angela Skinner at 17, lines 18-25; 18, lines 1-5, attached hereto as Exhibit Z (employee names have been redacted to protect employee's privacy).

Silverberg's separation from Sam's Town. *Id.*

      6.     Remnants of Marc Silverberg's Reign as Director of F & B

Mr. Silverberg was not "replaced" by anyone. Rather, his Department was subsumed with the Hotel Operations Department under one person and one title – the Director of Operations, which was headed by Michael Pastore ("Mr. Pastore"), Italian-American. Moreover, the "back of the house" (i.e. the kitchen) has been managed by Chef Jerrold Brooks ("Chef Jerrold"), who is African-American. When Mr. Pastore took over Mr. Silverberg's Department, he noticed that there were a number of problems, all of them attributed to Mr. Silverberg's lack of leadership. As such, he documented them in a memorandum to Mr. Stadler. *See* Inter-Office Correspondence from M. Pastore dated Sept. 20, 2008 attached hereto as Exhibit Q.

      7.     Mr. Silverberg's Recordings

In late March 2010, Sam's Town discovered that Mr. Silverberg, while he had been employed by Sam's Town, had been recording conversations with his employees, without their knowledge or consent. For the sake of brevity, Sam's Town will not rehash those facts contained in its Memorandum of Law and Authorities Supporting its Motion to Dismiss, currently pending before this Court. *See* Dkt. [30], [31], [36], [41]. Under Sam's Town's Standards of Conduct, Mr. Silverberg's recordings would be considered a terminable offense.[6] *See* Exhibit D; *see also* Boyd Gaming's General Rules of Conduct, attached hereto as Exhibit R. Had Sam's Town known that Mr. Silverberg was taping <u>his</u> employees without their knowledge or consent, he would have been terminated. *See* Exhibit D.

## IV.    ARGUMENT AND AUTHORITIES

---

[6] Mr. Silverberg was aware of these Standards of Conduct, as evidenced by his signing the Acknowledgment of Receipt of the Employee Handbook, attached hereto as Exhibit BB.

3545383.5/06597.33481

A.    SAM'S TOWN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIMS.

In his Complaint, Mr. Silverberg alleges that "[B]efore the decision was made by Stadler to terminate Plaintiff's employment, Plaintiff had made complaints to management about Stadler's ethnic bias. This opposition to discriminatory acts also proximately caused Plaintiff's termination." *See* Exhibit A at ¶8; *see also* Plaintiff's EEOC charge attached hereto as Exhibit S (Plaintiff allegedly making complaints of discriminatory treatment "to the assistant general manager working under [Mr. Stadler]"). To prove a prima facie case of retaliation under Title VII or § 1981,[7] Mr. Silverberg must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the employment action. *See, e.g., Aryain v. Wal-Mart Stores, Tex., L.P.,* 534 F. 3d 473, 484 (5th Cir. 2008). Sam's Town is entitled to summary judgment on Plaintiff's retaliation claims because Plaintiff is unable to prove a causal connection between any alleged protected activity and his termination from Sam's Town.

Plaintiff testified in his deposition that he had allegedly spoken to Brett Borek, assistant manager at Sam's Town, regarding Mr. Stadler's discriminatory treatment.[8] During his deposition, Mr. Borek admitted to meeting with Mr. Silverberg regarding his feelings towards

---

[7] *See* Shackelford v. Deloitte & Touche, LLP, 190 F. 3d 398, 403 nn.2 (5th Cir. 1999) ("When used as parallel causes of action, Title VII and section 1981 require the same proof to establish liability.") (internal citations omitted).

[8]    Mr. Silverberg: After [Mr. Stadler] made that [particular discriminatory] comment, I followed Brett Borek up to his office and we talked about it.

Mr. Irby:  And what did —

Mr. Silverberg:  I explained also at that time that [the comment] made me feel very uncomfortable because these folks or the folks [Mr. Stadler's] talking about worked for me or reported to me and Alan Handler, and then I was nervous that that comment could have been overheard and then I would have to deal with it.

\*          \*          \*

Mr. Silverberg: . . . . However that was not the only comment I mentioned to Brett. You know, that I also told him it made me feel uncomfortable because I had been exposed to other condescending and berating comments based upon my religion prior.

*See* Excerpts from Deposition Testimony of Marc Silverberg, March 2010 at 29, lines 13-21; 30, lines 7-11, attached hereto as Exhibit T.

Mr. Stadler. However, Mr. Borek remembered having a conversation regarding a "philosophical difference in [Mr. Stadler's and Mr. Silverberg's] management technique," not about any discriminatory treatment. *See* Excerpts from Deposition Testimony of Brett Borek at 7, line 25; 8, lines 1-8, attached hereto as Exhibit U. Regardless of this dispute as to what was actually discussed during these meetings between the Plaintiff and Mr. Borek, one thing is clear: Mr. Borek did not take any part in the decision to terminate the Plaintiff nor did he share these conversations with those who decided to terminate Mr. Silverberg (Mr. Stadler and corporate).

To establish the causation prong of a retaliation claim, Mr. Silverberg must demonstrate that "the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003). "[I]n determining whether an adverse employment action was taken as a result of retaliation, [the Court's] focus is on the final decisionmaker." *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002). However, while the court focuses on the ultimate decisionmaker, a plaintiff "can make out a prima facie case by showing that other employees, with discriminatory motives, had influence or leverage over the official decisionmaker." *Id.* (internal quotation marks omitted).

In Mr. Silverberg's case, he cannot impute knowledge of his alleged conversations with Mr. Borek to Mr. Stadler or to corporate, the primary decisionmakers behind Mr. Silverberg's termination. Mr. Silverberg testified that prior to his termination, he only complained of Mr. Stadler's discriminatory treatment to Mr. Borek.[9] According to Mr. Borek, who denies Mr. Silverberg's complaints of any discriminatory treatment by Mr. Stadler,[10] Mr. Borek was not

---

[9] Mr. Irby: . . . . Well, I was asking about those comments that you've told about that occurred, of course, prior to the P.I.P. and whether you reported any of them to anyone other than Mr. Borek at director level or above.
Mr. Silverberg: I cannot recall. I am – I cannot recall at this time.
Mr. Irby: Okay. You were aware that Boyd has an open door policy, and you could have reported them.
Mr. Silverberg: Yes, sir.
Exhibit T at 83, lines 1-9.
[10] Mr. Woodruff: . . . . [D]id Marc Silverberg ever complain to you about his treatment by Mr. Stadler?

3545383.5/06597.33481

involved in nor was particularly privy to the circumstances surrounding Mr. Silverberg's termination.[11] Mr. Stadler and corporate, with the assistance of Sam's Town's HR, jointly made the ultimate decision to terminate Mr. Silverberg. [12] Mr. Silverberg cannot impute knowledge of these conversations with Mr. Borek, who was not a decisionmaker, nor was consulted, to the actual decisionmakers. Moreover, he has not asserted (nor has he proven) that Mr. Borek had any retaliatory animus against him under a "cat's paw" theory who somehow influenced Mr. Stadler's and corporate's decision. As such, Sam's Town is entitled to summary judgment on Mr. Silverberg's retaliation claims.

> B.   SAM'S TOWN IS ENTITLED TO SUMMARY JUDGMENT AS TO MR. SILVERBERG'S RACE CLAIMS UNDER TITLE VII AND 1981

According to the landmark case, *St. Francis College v. Al-Khazraji*, a Jewish person can assert a race claim under 42 U.S.C. § 1981 for race discrimination. 481 U.S. 604 (1987). However, such a claim under § 1981 is not an easy claim to prove. The Supreme Court instructed, explaining that the proof in religious discrimination claims are not synonymous with race discrimination claims: "If [a plaintiff] . . . can prove that he was subjected to intentional discrimination **based on the fact that he was born [a Jew], rather than solely on . . . [his]**

---

Mr. Borek: He indicated there seemed to be a philosophical difference in their management technique, yes.
Mr. Woodruff: Did he ever complain about – about Mr. Stadler using any Jewish derogatory terms or making him feel uncomfortable about his religion?
Mr. Borek: I don't remember that at all, no.
Exhibit U at 7, line 25; 8, lines 1-8.
[11] Mr. Woodruff: Did you have any involvement in Marc Silverberg's termination?
Mr. Borek: No.
Mr. Woodruff: Do you know why he was terminated?
Mr. Borek: It's my understanding it was his performance.
Exhibit U at 9, lines 16-20.
[12] Mr. Woodruff: Were you [George Stadler] involved in Marc Silverberg's termination?
Mr. Stadler: Yes.
Mr. Woodruff: Who made that decision?
Mr. Stadler: It was made jointly between myself, HR, and our corporate office.
Mr. Woodruff: And who is HR?
Mr. Stadler: Angela Skinner.
*See* Excerpts from Deposition Testimony of George Stadler at 6, lines 10-17, attached hereto as Exhibit V.

3545383.5/06597.33481

**religion**, he will have made out a case under section 1981." 481 U.S. at 613 (emphasis added). In this case, there is no genuine issue of material fact in regards to Mr. Silverberg's race claim under § 1981 or Title VII.[13] In fact, by his own repeated admissions throughout discovery, he has made it abundantly clear that he was discriminated on the basis of his religion, not <u>race</u>. As such, Sam's Town is entitled to summary judgment on Mr. Silverberg's race claims under both Title VII and § 1981.

Defendant's Interrogatory Numbers 5, 6, and 9 specifically refer to Judaism as a religion <u>and</u> a race. *See* Plaintiff's Interrogatory Responses at 6-8, attached hereto as Exhibit W. In response to these Interrogatories, Plaintiff stated: "Plaintiff objects to the portion of the interrogatory that references 'being of the Jewish religion ***or race***,' as Plaintiff believes that being Jewish ***is a religion*** and **not** a race." *Id.* He even repeated the same objection in his response to Interrogatory Number 17, which requested that he state all facts supporting Mr. Silverberg's contention that Mr. Stadler despised all persons not of his ethnicity. *Id.* at 11-12. He confirmed these objections during his deposition.[14]

In addition to admissions contained in his responses to Sam's Town's Interrogatories, Mr. Silverberg's deposition testimony is replete with references to **religious discrimination only**:

> Mr. Irby:          . . . And there are other -- other people of Jewish <u>heritage</u> who are at the property.

---

[13] *See supra* note 7 and accompanying text.

[14] In Mr. Silverberg's first deposition, he testified:
Mr. Irby: . . . You -- in Interrogatory 5, you're asked about, "Identify every person you contend witnessed any discrimination based on being [of the] Jewish religion or race," and you -- are you with me on Page 6?
Mr. Silverberg: Yes sir.
Mr. Irby: And you object or your lawyer does being of the religion or ace, that Jewish -- "being Jewish is a religion and not a race."
Mr. Silverberg: Yes sir.
Mr. Irby: Okay.
Mr. Silverberg: I object to that.
Exhibit T at 46, lines 5-15.

3545383.5/06597.33481

Mr. Silverberg:        Of Jewish **faith**.

\*       \*       \*

Mr. Silverberg:        And [Mr. Stadler] was standing or sitting here . . . . And he said, "They hired all of your kind." And I said, "What do you mean? What are you talking about?" And he started saying names of people that would be identified as names of people of the Jewish **faith**.

Exhibit T at 24, lines 12-14; 27, lines 8-13 (emphasis added).

Even when referencing his conversations with Brett Borek, Mr. Silverberg recalled Mr. Silverberg's complaining of <u>religious</u> discrimination:

Mr. Silverberg:        . . . You know . . . I also told [Mr. Borek] [the discriminatory comment] made me feel uncomfortable because I had been exposed to other condescending or berating comments **based upon my religion** prior.

*Id.* at 30, lines 7-11 (emphasis added).

Mr. Silverberg also described his case as being one based upon <u>religious</u> discrimination to a former Sam's Town employee just prior to his deposition in March 2010:

Mr. Irby:        . . . What was your discussion with [Kimyata Randall] [about]?

Mr. Silverberg:        [Kimyata Randall] asked why I was terminated. I said . . . **I was terminated because of my religion**.

*Id.* at 108, lines 19-24 (emphasis added).

Further, Mr. Silverberg, in a later deposition, explained why he started recording conversations with Sam's Town employees without their knowledge or consent. He testified: "I had a feeling that George Stadler was out to get -- was out -- for lack of better terms, George Stadler was out to get me or to terminate me **based upon my religion**." *See* Excerpts from Deposition Testimony of Marc Silverberg, July 2010, at 105, lines 4-8, attached hereto as Exhibit X (emphasis added).

As Mr. Silverberg has no evidence that he was discriminated because he was <u>born</u> a Jew,

- 13 -

his race claims under § 1981 and Title VII should be dismissed.

### C.   MR. SILVERBERG'S CLAIM FOR RELIGIOUS DISCRIMINATION FAILS AS A MATTER OF LAW.

A plaintiff trying to prove that he was discriminated in his employment due to an illegal factor can prove discrimination two ways: via direct evidence or circumstantial evidence.

### 1.   Mr. Silverberg does not have direct evidence to prove religious discrimination

"Direct evidence is evidence, that, if believed, proves the fact of discriminatory animus without inference of presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Plaintiff, in his deposition testimony, testified to three comments that were made to him by Mr. Stadler: (1) once, in approximately November 2007, when Mr. Stadler asked him to portray Santa Claus at a company holiday party; (2) once, around November 2007, when Mr. Stadler said, "Asallah - you should know what that means as it comes from your part of the world"; and (3) once, in July 2008, when Mr. Stadler said to Mr. Silverberg that a casino in the Midwest was opening and had hired "your kind" of people and started rattling off "Jewish-sounding" names. *See* Exhibit T at 16, lines 10-15; 20, lines 1-25, 21, lines 1-25, 22, lines 1-5; 25, lines 16-25, 26, lines 1-25, 27, lines 1-13. None of these comments can be considered to be direct evidence of discrimination.

For comments in the workplace to serve as evidence of discrimination, they must be: (1) related to the protected class; (2) proximate in time; (3) made by an individual with authority; and (4) related to the employment decision. *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 261 (5th Cir. 2007). The first two comments (the Santa Claus and "Assalah" comments) made by Mr. Stadler in approximately November 2007 cannot serve as evidence of discrimination as they are too remote in time. These comments were made almost eight (8) months prior to Mr. Silverberg receiving his PIP and nine (9) months prior to his separation from

- 14 -

Sam's Town.

The "hired your kind" comment likewise is not direct evidence of discrimination because it requires the Court to draw an inference between this statement and Mr. Silverberg's termination. *See Jones v. Overnite Transp. Co.*, 212 Fed. App'x 268 (5th Cir. 2006) (alleged statements of supervisor that he wanted to "get rid of all the blacks" and supervisor's alleged request that staffing agency send white drivers instead of black drivers was not direct evidence of discrimination because they "require[d] the trier of fact to infer a nexus" between the statements and the alleged acts of discrimination and because they "lack[ed] the indicia of specificity and causation required to be direct evidence of race discrimination"); *Stover v. Hattiesburg Public Sch. Dist.*, 2007 WL 465664 (S.D. Miss. Feb. 8, 2007) (finding that a supervisor's comment that "he was concerned that there were so few white men working in the office" and "that white female employees were not comfortable with all the black employees in the office" was not direct evidence of race discrimination). Accordingly, this Court should not consider this case to be one of direct evidence.

> 2.     Mr. Silverberg does not have circumstantial evidence to prove religious discrimination

### a.     *Prima Facie Case*

If a plaintiff does not have direct evidence, the traditional *prima facie* case of religious discrimination requires proof that the plaintiff (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for his position; and (4) was replaced by someone outside the protected class or that similarly situated employees outside the protected class were treated more favorably. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). Sam's Town concedes that Mr. Silverberg can satisfy proving a *prima facie* case of religious discrimination because Plaintiff is Jewish, was terminated, arguably qualified for his

- 15 -

position, and was replaced by Mr. Pastore, a Catholic.[15]

    b.  *Defendant's Legitimate Nondiscriminatory Reason*

   If a plaintiff is able to prove a *prima facie* case, the burden then switches to the employer to "rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action." *Turner*, 476 F.3d at 345. Identifying a nondiscriminatory basis for termination is a burden of "production, not persuasion, and involves no credibility assessment." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

   Here, Sam's Town satisfies its burden by articulating that it terminated Mr. Silverberg due to unacceptable job performance. This violation is addressed in Sam's Town's employee handbook and is considered potential grounds for termination. *See* Exhibit R (stating among reasons an employee may be discharged, "[u]nsatisfactory job performance"). Moreover, Sam's Town has produced hundreds of email and memoranda supporting its decision, as these documents highlighted the F & B Department's failures and problems, things for which Mr. Silverberg, as its Director, was ultimately responsible.

    c.  *Pretext*

   Because Sam's Town stated a legitimate nondiscriminatory reason for its decision, "the inference created by the prima facie case drops out of the picture," and the burden reverts to the plaintiff to produce evidence that the proffered reason is a pretext for unlawful discrimination. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Plaintiff must rebut each nondiscriminatory reason articulated by the employer. *See, e.g., Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). In order to establish pretext, Plaintiff must show evidence of disparate

---

[15] It is unknown what denomination Chef Jerrold, who is in charge of the "back of the house," practices.

3545383.5/06597.33481

treatment or show that the employer's proffered reason is false or "unworthy of credence." *Id.* (citing *Reeves*, 530 U.S. at 143). An explanation is false or "unworthy of credence" if it is not the real reason for the adverse employment action.

A *prima facie* case and sufficient evidence may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves*, 530 U.S. at 148. However, the Firth Circuit has recognized this showing may not be enough to survive summary judgment. "For instance, an employer would be entitled to summary judgment if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination occurred." *Pratt v. City of Houston, Texas*, 247 F.3d 601, 606 (5th Cir. 2001) (quoting *Reeves*, 530 U.S. at 148). Thus, whether summary judgment is appropriate is a multi-factored question based on "the strength of plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that may be properly considered." *Reeves*, 530 U.S. at 148-49. The plaintiff can defeat summary judgment if the evidence, in its totality, creates a fact issue as to whether the employer's asserted reasons are false or has otherwise created "a reasonable inference that [religion] was a determinative factor" in the defendant's decision to terminate him. *Pratt*, 247 F.3d at 606-07. Mr. Silverberg cannot.

(1) *Plaintiff was not treated differently than someone outside his protected class.*

Plaintiff cannot show that he was treated differently than someone outside his protected class. The only other director who was terminated within the same time period of Mr. Silverberg's employment was white and presumably Christian. *See* Excerpts from Deposition Testimony of Director Employee, at 6, lines 12-25, attached hereto as Exhibit Y (acknowledging that he was terminated from his position due to workplace misconduct) (employee name has

been redacted to protect privacy).

Ms. Skinner testified that she was notified of some racially offensive comments this director uttered at a company event. Since she was already in Las Vegas for a meeting, Ms. Skinner immediately reported the comments to corporate HR. Shortly thereafter, this director was terminated. *See* Exhibit Z at 17, lines 18-25; 18, lines 1-5 (employee names have been redacted to protect privacy). This demonstrates that Sam's Town does not treat non-Jewish employees more favorably that Jewish employees.

> (2) *Plaintiff cannot show that Sam's Town's reasons for termination were false or unworthy of credence.*

While Mr. Silverberg may point to comments that were allegedly said by Mr. Stadler prior to his termination, Mr. Silverberg has failed to tie any alleged discriminatory animus to corporate, the other decisionmaker. In fact, throughout discovery, Mr. Silverberg has been solely fixated on what Mr. Stadler said and why **Mr. Stadler** terminated him. However, given that Mr. Silverberg was a director, Mr. Stadler could not unilaterally terminate him. *See* Exhibit D; *see also* Exhibit Z at 23, lines 16-20.[16] As such, Mr. Stadler, in conjunction with corporate, and after much deliberation, decided to terminate Mr. Silverberg from Sam's Town. *See* Exhibit D; *see also* Exhibit V at 6, lines 10-15.

Mr. Silverberg cannot prove that Mr. Stadler exerted any influence over corporate to terminate Mr. Silverberg. In fact, quite the opposite is true. It was ***corporate***, not Mr. Stadler, who initially recommended that Mr. Silverberg be placed on a PIP over seven (7) months prior to Mr. Silverberg's termination from Sam's Town. ***If what Mr. Silverberg says is true – that Mr. Stadler harbored a discriminatory animus against Jewish people and just wanted to rid of him***

---

[16] Mr. Woodruff: Does a general manager, George Stadler or anybody else, have the authority to terminate a director on their own?
Ms. Skinner: Not at Sam's Town Tunica. All of that has to go through corporate.

***due to his Jewish religion – then Mr. Stadler would have seized the opportunity corporate
presented in January 2008 to accelerate Mr. Silverberg's departure.*** Instead, Mr. Stadler chose

to take Mr. Silverberg under his wing in an attempt to assist him in succeeding rather than

placing him on a PIP.

Mr. Silverberg will deny that he had any shortcomings and will again try to pass the

blame to everyone else.[17] For the Court's benefit, Sam's Town has attached transcripts of some

of the infamous recordings to this Memorandum. These transcripts are attached hereto

collectively as Exhibit AA.[18] Even though Plaintiff's counsel believes that these recordings are

not material,[19] in a couple of these recordings, Mr. Silverberg admits that Human Resources and

Mr. Stadler were correct by pointing out his Department's deficiencies,[20] thus affirming the

validity of his PIP and reasons behind his termination. Perhaps the most telling indicator of Mr.

Silverberg's lack of veracity, was Mr. Silverberg's failure to discuss his suspicions of Mr.

Stadler's alleged anti-Semitism with anyone he recorded, even those to whom he disclosed the

fact that he had been using a recording device at Sam's Town and been placed on a PIP.[21] While

he does call Mr. Stadler just about every name in the book,[22] one would think he would at least

call Mr. Stadler an "anti-Semite" or something to that effect if he believed Mr. Stadler to be so.

Accordingly, this Court should grant summary judgment in Sam's Town's favor

---

*See* Exhibit Z at 23, lines 16-20.

[17] During his first deposition, Mr. Silverberg denied speaking to Mr. Chakmak regarding any shortcomings he allegedly had as a manager. He testified: "No. I would never admit to my shortcomings or that I had any shortcomings." *See* Exhibit T at 120, lines 1-7.

[18] If the Plaintiff objects to the accuracy of these transcripts, Defendant will provide copies of the actual recordings for the Court's benefit.

[19] *See* Dkt [43], Affidavit of R. Woodruff at ¶(l) ("In Woodruff's opinion, there is no relevant evidence in the taped conversations.").

[20] *See* Exhibit AA at "Pre-Shift," page 3 ("And I've probably been negligent by not coming to pre-shift. I am negligent."); *see also* "4 Hours Me Counseling Alan and Bill" at 30-32, 36, 38, 46-48 (admitting that F & B Department had been screwing up to Alan Handler and Bill Glass).

[21] *Id.* at "4 Hours Me Counseling Alan and Bill" at 47-48 ("[Mr. Stadler's] an asshole, he's a dick, he's, excuse my language.").

[22] *See supra* note 22 and accompanying text.

- 19 -

3545383.5/06597.33481

regarding Plaintiff's claim for religious discrimination under Title VII.

> D.     MR. SILVERBERG'S DAMAGES SHOULD BE LIMITED UNDER THE
> AFTER-ACQUIRED EVIDENCE THEORY.

In late March 2010, Sam's Town discovered that Mr. Silverberg had surreptitiously taped multiple conversations with Sam's Town employees without their knowledge or consent, while he was still employed by Sam's Town.[23]   Sam's Town should have discovered this fact in December 2009 when Mr. Silverberg propounded his initial disclosures.[24]   Mr. Silverberg's surreptitious taping is clearly against Sam's Town's policy that disallows the use of recording devices on property without prior authorization and is an immediately terminable offense.  *See* Exhibits D and R.

In *McKennon v. Nashville Banner Publishing Co.*, the United States Supreme Court held that after-acquired evidence (such as Sam's Town's discovery of Mr. Silverberg's use of a recording device on property without prior consent from Mr. Stadler) can limit a plaintiff's damages award and will generally render reinstatement and front pay inappropriate.  513 U.S. 352 (1995).  Furthermore, the Supreme Court instructed trial courts how to determine back pay when faced with after acquired evidence: "The beginning point in the trial court's formulation of a remedy should be calculation of back pay from the date the new information was discovered." *Id.* at 362.  "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known it at the time of discharge." *Id.* at 362-63; *see also Shattuck v. Kinetic Concepts, Inc.*, 49 F.3d 1106, 1108 (5th Cir. 1995) ("We are persuaded that the pertinent inquiry, except in refusal-to-hire cases, is

---

[23] *See* Dkt [30], [31], [36], [41] where this issue and facts were more fully briefed for the Court.  Defendant is troubled by the fact these recordings were not disclosed by March 2010 and should have been disclosed much earlier in discovery

3545383.5/06597.33481

whether the employee would have been fired upon discovery of the wrongdoing, not whether he would have been hired in the first instance.").

In this case, Sam's Town should have reasonably uncovered this wrongdoing by December 2009 by Plaintiff's Initial Disclosures. Had Sam's Town discovered, at the time when Mr. Silverberg was still employed by Sam's Town, that Mr. Silverberg had been recording not only his meetings with Ms. Skinner and Mr. Stadler, but his own employees without their knowledge or consent, Sam's Town would have immediately terminated Mr. Silverberg's employment, as using a recordable device on property without prior consent is a violation of Boyd's Standards of Conduct. *See* Exhibits D and R. As such, Sam's Town requests that this Court limit Mr. Silverberg's damages by preventing him from recovering front pay and reinstatement as well as limiting his back pay to December 2009.

## V. CONCLUSION

As much as Mr. Silverberg would like to pass the blame of his inadequate leadership to his subordinates, the buck stops at the top. And at the end of the day, Mr. Silverberg, as Director of F & B, was responsible for any problems that occurred in his Department. The Plaintiff has not and cannot produce enough evidence to warrant a jury trial of his claims. Based on the foregoing, together with Defendant's Motion for Summary Judgment, filed contemporaneously herewith, Defendant respectfully urges the Court to grant summary judgment in its favor, dismiss Plaintiff's claims with prejudice in their entirety and award Defendant costs.

This the 17th day of August, 2010.

---

[24] *See supra* note 24 and accompanying text.

3545383.5/06597.33481

Respectfully Submitted,

BOYD TUNICA, INC.


_/s/ Courtney Leyes Tomlinson_
Courtney Leyes Tomlinson


Peyton S. Irby, Jr. (MB No. 3029)
WATKINS LUDLAM WINTER & STENNIS, P.A.
190 East Capitol Street, Suite 800
Post Office Box 427
Jackson MS  39205-0427
(601) 494-4900
pirby@watkinsludlam.com

Courtney Leyes Tomlinson (MB No. 103158)
WATKINS LUDLAM WINTER & STENNIS, P.A.
6897 Crumpler Boulevard, Suite 100
Post Office Box 1456
Olive Branch, Mississippi  38654
(662) 890-6253
ctomlinson@watkinsludlam.com


## CERTIFICATE OF SERVICE

I hereby certify I electronically filed the foregoing with the U.S. District Court for the Northern District of Mississippi, Delta Division, which will electronically serve the following counsel of record:

Jim Waide
WAIDE & ASSOCIATES, P.A.
Post Office Box 1357
Tupelo, Mississippi 38802

This the 17th day of August, 2010.


_/s/ Courtney Leyes Tomlinson_
COURTNEY LEYES TOMLINSON

3545383.5/06597.33481